On November 25, 1940, at about 10:00 o'clock in the morning, the right rear end of the automobile owned and being operated by plaintiff, Mrs. Gladys Mullens Broughton, was struck by the front bumper of a 1935 one-half ton Chevrolet truck belonging to the T.S.C. Motor Freight Lines, Inc., and driven by its employee, Howard F. Peters. The accident occurred on Travis Street, at its intersection with Marshall Street, in the City of Shreveport.
The Broughton car, at the time, was at a standstill in obedience to the displayed red light of the intersection's semaphore; and unquestionably the striking of it from behind was due solely to the negligence of the truck operator in that he failed to keep his vehicle under the required control or was not properly observant of the existing traffic conditions.
In this suit sounding in tort, in which the truck owner and its insurer are impleaded as defendants, plaintiff alleges:
"That as a result of said accident the automobile of your petitioner was damaged to the extent of Thirty One and 27/100 ($31.27) Dollars, all as is shown by the itemized statement hereto attached and made a part hereof.
"That as a further result of said accident, your petitioner was thrown forward against the steering wheel and bruised, jerked and mashed throughout the body, your petitioner being pregnant at said time.
"That as a further result of said accident, your petitioner was rendered highly nervous, and the posterior ligaments of the cervical vertebrae extending down into the dorsal region of the spine were jerked and twisted, causing much pain, and petitioner likewise received a blow to and injury of the lumbo-sacral region of her back, causing much pain, as well as a twisting of her neck, which caused petitioner to suffer much pain for a considerable time; that she was likewise bruised and mashed in and about her abdomen.
"That as a further result of said accident, the child of your petitioner, which had not as yet been born, because of the injuries received by petitioner was born prematurely and before the time it would have ordinarily been born, all as a result of the injuries and blows inflicted upon petitioner as a result of said accident, said child being born December 10th, 1940.
"That as a further result of said accident and as a result of said child, which was a baby girl, having been born prematurely, its heart had not developed sufficiently to permit it to live and despite the best of medical care and attention said child died, solely as a result of said accident, on January 11th, 1941.
"That further, as a result of said accident, your petitioner shows that she was required to incur medical, ambulance, drug, nursing, board, funeral and hospital bills to the amount of Two Hundred Six and 25/100 ($206.25) Dollars, both for herself and because of the premature birth of said child."
For the various items of damages described, plaintiff asks an award in the total sum of $10,237.52.
The defense is that the collision in no manner proximately caused the injuries and damages of which complaint is made.
Following a trial of the case on its merits, judgment was rendered rejecting the demands of plaintiff. From it she prosecutes this appeal.
A careful study of the record has been made by us, and we are unable to disagree with the trial court's decision.
In the first place, the impact experienced by the two vehicles cannot be classed as having been violent in nature. The evidence respecting its severity is quite conflicting; but a preponderance thereof discloses that it was, as described by a disinterested witness, "a light collision."
The claim for damages sustained by the automobile is not proved with certainty. Attached to plaintiff's petition and filed in evidence is a written estimate of needed repairs giving a total cost of $31.27. The mechanic preparing the estimate, however, admitted at the trial that the accident *Page 213 
could not have been responsible for some of the deficiencies listed; and he does not show definitely the cost of those repairs, if any, made necessary by the collision.
The nervousness and pains complained of by plaintiff, according to our appreciation of the medical proof, naturally preceded and attended the birth of her child that took place fifteen days after the impact.
Anent the contention that the accident caused the premature birth of the child with the consequence that "its heart had not developed sufficiently to permit it to live and despite the best of medical care and attention said child died," the hereafter detailed circumstances are pertinent. Admittedly the baby was an offspring of plaintiff's marriage to James L. Broughton who died March 3, 1940. Its delivery occurred at 5:04 P.M. o'clock December 10, 1940, or 282 days after the father's death. According to the hospital records, it was received in the nursery of that institution as an apparently normal baby girl, weighing six pounds four and one-half ounces, and being nineteen inches in length.
On the thirty-first day following the birth, during which intervening period satisfactory progress respecting its health was noticed, the child began gasping for breath. Whereupon the mother immediately sought medical attention; but before obtaining it, and within ten minutes after the gasping commenced, the child died. Shortly thereafter a physician made a superficial examination of the deceased infant and concluded that death resulted from failure either of the heart or the lungs. It was his opinion that the percentage of deaths among children is larger during the first thirty days of their lives than in any other similar period. The causes for this higher percentage, said he, are numerous, and include malnutrition, defective respiration and diseases of the blood and heart.
It appears from the testimony of the medical experts that the usual period of gestation is from 270 to 290 days, the average being 280 days; and that a mature baby at birth is one weighing live and one-half pounds or more and exceeding eighteen and one-half inches in length. If delivery occurs before the elapse of 270 days from conception, it is premature. A child is said to be immature at birth when the mentioned weight or length does not exist.
Granting that the infant in the instant case was conceived on the day of the father's death, this being March 3, 1940, and the latest possible date, the gestation period endured by plaintiff of 282 days was not unusual. Hence, there was no premature birth. Furthermore, it could not be termed an immature child, for both the weight of six pounds four and one-half ounces and the length of nineteen inches exceeded the above described requirements.
It appears that plaintiff's baby was pigeon breasted, did not possess the usual amount of flesh, was wrinkled, and had a small circule on its head; and that such head was large in proportion to the size of the body. The record clearly shows, however, that these conditions frequently occur with normal children and are not indicative of premature birth.
Inasmuch as the proof discloses no causal connection between the accident and the discussed death, the claim for medical, hospital and funeral expenses is without merit.
The judgment is affirmed.