422 So.2d 499 (1982)
Charmayne BONNET for and on Behalf of her Minor Child Andrew BONNET
v.
Rhea SLAUGHTER d.b.a. Lad's and Lassie's Day Nursery and her and/or its Insurer.
No. 13171.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
Rehearing Denied December 21, 1982.
*500 John P. Ferrara, New Orleans, for plaintiff-appellee.
William H. Slaughter, III, New Orleans, for defendant-appellant.
Before BARRY, LOBRANO and WILLIAMS, JJ.
BARRY, Judge.
Plaintiff, Charmayne Bonnet, was awarded $5,018.50 on behalf of her minor child, Andrew Bonnet, for burns he received while under the care of the defendant nursery now appeals.
Mrs. Slaughter, the defendant owner of the nursery and the child's aunt, testified the nine month old child was wearing a soiled diaper and she decided to bathe him. She turned on hot water, leaving the child standing outside the tub, and moved to reach for clothes, soap and a towel. At that moment the child put his hand under the hot running water, burning his right hand, fingers and arm. Mrs. Slaughter took Andrew to the Hotel Dieu emergency room where he was treated and released. She testified "they cut away the burned skin and they soaked his hand and they applied medicine and bandaged it." The emergency room form noted at the bottom "Instructions to the Patient: You are to contact ... your doctor, a plastic surgeon within 24 hours for follow up care." The form indicates a copy was given to Mrs. Slaughter.
That evening, when the child was taken to his mother's house, Mrs. Slaughter reported the accident and the emergency room treatment to Ms. Bonnet. Apparently, the instruction to take the child to a plastic surgeon within twenty-four hours was not conveyed to Ms. Bonnet, who testified Mrs. Slaughter only told her not to remove the bandage because of infection. Ms. Bonnet took the child back to the hospital *501 that night because he was running a fever, but could get no results as Mrs. Slaughter had registered the child in the emergency room under her name, i.e., as Andrew Slaughter, in order to obtain treatment. After leaving the hospital she telephoned Andrew's pediatrician, Dr. Joseph Craven, who stated he thought the injury sounded like an ordinary second degree burn from hot water. He ordered a sedative and saw the child the next morning, but upon seeing the burn he felt it was "very severe, it was second degree but it was a deep second degree burn and it was much more than I would have expected over the phone." The entire right hand and forearm up to the elbow was involved, the fingers were blistered, and Dr. Craven feared some of the burns could be third degree. Dr. Craven immediately contacted Dr. D.D. Delgado, a plastic surgeon, and the child was admitted to the hospital on August 1, 1979 and discharged on August 11, 1979.
Dr. Craven saw the child every day during his hospitalization primarily for a respiratory infection the child developed unrelated to the accident. He described the burn as very painful and noted it was probably more painful to a baby than it would have been to an adult. He testified the child was administered a pain killer or sedative while hospitalized and he opined such an injury would fully heal in "about a month." As to scarring, Dr. Craven described it as "miniscule" pointing out if you looked closely you could see a "little fine scar and a little looseness of tissue." Except for this, the skin was well healed and seemed as healthy as normal skin.
Dr. Craven was also of the opinion Andrew would probably experience a fear of water, the hand would be more sensitive to heat because of nerve irritation, and nightmares might occur. Ms. Bonnet did not verify any of these particular symptoms but stated since the accident Andrew had been having "mental problems ... he bites himself." However, she couldn't directly attribute this to the accident. She did say because Andrew wasn't managing well she only worked part-time around Christmas and eventually quit work altogether.
Dr. Delgado's (the plastic surgeon) report was admitted into evidence. He saw Andrew each day of his hospitalization, except August 10, and for follow-up in his office on August 15, 22, September 9, and 22. The child was not seen again until May 8, 1980 when he was discharged and there was another evaluation on March 23, 1981.
Dr. Delgado's diagnosis was deep second degree burns of right digits (5) circumferentially, right hand dorso/volarly, right wrist and forearm distal/3 circumferentially; second degree burns of right forearm and elbow; and right upper extremity cellulitis.
During the trial the Judge examined the child's hand and observed the skin on the right hand looked different from the left because it did not have the same coloration and the skin appeared "slightly crinkled."
Medical bills were stipulated for Dr. Delgado at $705.00 and $13.50 for the hospital.
On appeal defendant contends she was not negligent because the child had not been left alone and he gave no warning or indication he would do what he did. Defendant asserts there is no liability for the sudden acts of a child; rather, one who undertakes supervision of a child has a duty to exercise reasonable care to protect the child from injury. She also argues known characteristics of a child must be taken into account when determining whether a person has exercised reasonable care. Freeman v. Wilcox, 303 So.2d 840 (La.App. 1st Cir.1974) writ denied 307 So.2d 630 (La. 1975). Defendant urges she was not inattentive and this was "nothing more than [sic] unfortunate and unforeseen and unavoidable accident."
Plaintiff properly cites Comeaux v. Commercial Union Insurance Co., 269 So.2d 500 (La.App. 4th Cir.1972), which states at pp. 502, 503:
While the law imposes a duty upon the operator of a nursery to exercise the highest degree of care toward the children, he does not thereby become their *502 unconditional insurer against injury. Oldham v. Hoover, 140 So.2d 417 (La.App. 1st Cir.1962). The fulfillment of the obligation owed does not exact individual supervision of each child at all times and places. Bourgeois v. Indemnity Ins. Co. of North America, 60 So.2d 718 (La.App. Orl.1952).
Our brethren in the First Circuit in Freeman, supra, stated at p. 842:
Where a person undertakes the control and supervision of a child, he has the duty to use reasonable care to protect the child from injury. Although such person is not an insurer of the safety of the child, he is required to use reasonable care commensurate with the reasonable foreseeable risk of harm to which the child might be subjected while under his control and supervision. Williams v. Allstate Insurance Company, La.App., 268 So.2d 290 (1972).
Actionable negligence results from the creation of an unreasonable risk of harm. Where it is foreseeable that a small child is exposed to this risk of harm, liability will result when there is a consequent injury because of the creation of the unreasonable risk of harm to the child. Smolinski v. Taulli, 276 So.2d 286 (La.1973).
Findings of negligence are subject to the manifest error standard. Canter v. Koehring Co., 283 So.2d 716 (La.1973). While this defendant was not the insurer of the child's safety, we feel it was her negligence, the creation of the unreasonable risk of harm, that caused the injuries. We find ample support in the record for the Trial Judge's determination that defendant's conduct constituted actionable negligence.
Defendant argues $4,000 for pain and suffering is excessive because the child's injuries were not severe: the burns were second degree, took only one month to heal, there was no residual injury, emotional upset would clear up in a few weeks, and the plastic surgeon saw the child only five times after discharge.
Plaintiff counters that $4,000 was inadequate. She asserts in determining the award we should consider: emergency room treatment was required; second degree burns; hospitalization for ten days; treatment by the plastic surgeon for over seven weeks post injury; and medical bills (before welfare credit) exceeded $3,000.00.
We are easily satisfied that $4,000 for painful second degree burns on the arm and hand, though for a moderate duration and with miniscule scarring, is reasonable and could be considered conservative.
Defendant also argues that $4,000 for pain and suffering is excessive because of her impecunious condition.
Plaintiff agrees evidence of inability to pay is admissible, but says lack of insurance is insufficient proof and defendant did not produce any evidence of her financial status. Plaintiff points to the record which shows defendant ran a nursery for nearly 20 years with employees, "drove a van to pick up some twenty children or more, and presumably owned or was buying the premises where she lived and operated her business."
The theory behind the "inability to pay" rule was stated in Cole v. Sherrill, 7 So.2d 205 (La.App. 2d Cir.1942):
It has never been considered good policy to bankrupt one to pay another even though the award granted is not in line with other cases involving the same injuries and might not fully compensate the plaintiff for the injuries he received. Fair justice between both parties must be arrived at. 7 So.2d 211.
Evidence of inability to pay must be proven by those who claim this defense. We find no evidence to establish defendant's inability to pay.
Finally, defendant maintains $300 for lost wages was improper and excessive because plaintiff testified she was working while on welfare, and suggests it is "improper and perhaps against public policy for a person to collect welfare and then work on the side, and then be able to claim loss of income in a law suit [sic] ..." Plaintiff answers her work was not permanent and the day of the accident was her first day on the job as a waitress. She testified she had to stay with the child 24 hours a day while he was hospitalized and missed work for approximately *503 three weeks. She would have earned approximately $4/hour, working between 30 and 40 hours a week and the Trial Judge awarded $300 in lost wages. She produced no income tax returns or receipts from Houlihan's. She also testified because of Andrew she started working part-time around Christmas and eventually stopped working.
Plaintiff's uncontradicted testimony as to her lost wages is sufficient if credible and reasonably establishes her claim. Income tax returns and further corroborating evidence, though preferred, are not necessary. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971).
The Trial Judge could have factually concluded that plaintiff was on welfare only during the period she had to stay with Andrew. If so, under the "collateral source" rule, no credit should be allowed for welfare payments. Hall v. State Dept. of Hwys., 213 So.2d 169 (La.App. 3rd Cir.) writ refused, 252 La. 959, 215 So.2d 128 (1968).
We find no abuse of discretion as to any damages. Reck v. Stevens, 373 So.2d 498 (La.1979).
The judgment of the district court is affirmed at appellant's cost.
AFFIRMED.