435 So.2d 575 (1983)
Alva Ray JOWERS, Plaintiff-Appellant,
v.
COMMERCIAL UNION INS. CO., et al., Defendants-Appellees.
No. 83-139.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
Rehearings Denied August 17, 1983.
*576 Edward A. Kaplan, Alexandria, for plaintiff-appellant.
Trimble, Randow, Percy, Wilson & Foote, Lon P. Wilson, Gold, Little, Simon, Weems & Bruser, Edward E. Rundell, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
YELVERTON, Judge.
This is a personal injury suit. Plaintiff, Alva Jowers, sustained severe concrete burns on his legs while spreading and leveling wet concrete for his father. Plaintiff filed suit against the manufacturer/supplier of the ready-mix concrete, Louisiana Industries Pre-Stressed Corporation, as well as against his father's homeowner insurer, Commercial Union Insurance Company. From a jury verdict finding neither of the defendants liable, plaintiff has appealed. We affirm the jury's verdict with respect to the homeowner insurer. We reverse as to defendant, Louisiana Industries Pre-Stressed Corporation, and render judgment against it awarding damages. We find that Louisiana Industries' failure to warn of the dangerous propensity of wet concrete to burn skin was conduct which renders it liable in the case.
The facts are undisputed. On November 5, 1981, while Alva Jowers was visiting at his parents' home in Pineville, Louisiana, a truck from Louisiana Industries delivered eight yards of ready-mix concrete which had been ordered by the Jowers earlier that day to lay a slab for a garage. The truck driver unloaded the concrete through a chute into forms constructed by the elder Jowers. Afterwards, plaintiff helped his father spread and level the concrete. Plaintiff wore rubber boots, blue jeans, a short sleeve shirt and gloves. Plaintiff held one end of a board while his father held the opposite end and together they dragged the board back and forth across the wet concrete. To be down near the form plaintiff knelt on the ground and moved back and forth on his knees. In the process, he got concrete in his boots and his blue jeans became saturated with concrete juices and particles. After working about 45 minutes plaintiff felt a burning sensation in his knees but thought he had merely scraped his knees on a stump while kneeling. After the work was completed he washed his arms and hands and removed his blue jeans. He noticed he had cement on his legs. He attempted to take a shower but when the water came in contact with his legs he experienced severe pain. He then went to the Rapides General Hospital emergency room in Alexandria. The hospital personnel washed his legs, gave him a shot, applied *577 silvadene cream upon the burned areas, and released him. The following two days (Saturday and Sunday) the burning sensation continued in his legs and he developed a high fever. On Monday, having returned to his own home in Monroe, he visited Dr. Frank Rizzo who hospitalized him in St. Francis Medical Center. Plaintiff remained in the hospital for 19 days undergoing surgery and "Hydrotherapy" treatment for first and second degree burns on both legs.
Plaintiff filed the present suit alleging that his injuries were caused by Louisiana Industries' failure to warn the Jowers that wet cement could cause burns to the skin and by his parents' failure to take the necessary precautions to prevent injuries to him while working with the concrete.
The deposition of William Hime, a chemist with expertise in the chemistry of portland cement and concrete was offered by plaintiff. His testimony shows that cement and concrete burns occur when there is excessive exposure of the cement juices to the skin. Cement solutions will dissolve the skin and produce a severe burn depending on the time of the exposure and the sensitivity of the skin of the user. Portland cement is a highly alkaline material that upon being mixed with water has a PH of 12 or higher. The chemicals (calcium hydroxide, sodium hydroxide, and potassium hydroxide) in the cement will dissolve skin as well as extract moisture from the skin. Areas of skin where abrasions are present are especially susceptible to being burned by the juices.
Louisiana Industries manufactures and sells portland cement in two forms. It sells it as a dry product in 94 lb. sacks, and also sells and delivers it mixed with sand, gravel and water as wet concrete. It was in the form of wet concrete that the sale and delivery were made to the Jowers residence.
On its bags of dry cement Louisiana Industries places a warning, reading:
"Cement and cement dust may cause skin irritation and damage to the eyes upon contact. Avoid direct contact with skin and eyes. Wash exposed skin promptly, and rinse eyes immediately and repeatedly with clean water. If irritation persists, get prompt medical attention."
No such warning is given to the purchasers of mixed concrete, however, as the cement delivered is not in bags but is already mixed with the other ingredients.
James Mercer, the personnel and safety director for Louisiana Industries, testified that the ready-mix concrete delivered to the Jowers was properly mixed and contained approximately 10-12% portland cement. Louisiana Industries does not require its drivers to give warnings to customers that wet concrete can cause burns. The evidence establishes that neither the driver for Louisiana Industries nor Mr. and Mrs. Jowers warned the plaintiff that coming into contact with wet cement could cause burns. The expert, William Hime, stated that many suppliers in the industry of ready-mix concrete warn of the dangers of portland cement concrete either verbally or by pamphlets.
The testimony at the trial reveals that the plaintiff had worked with concrete only once before this accident, and that he had no knowledge that wet concrete or wet cement could cause burns. The elder Mr. Jowers testified that he likewise had very little experience in handling wet concrete and did not know that it could cause burns.
The jury was asked to render a special verdict consisting of answers to interrogatories. The first two questions dealing with the liability of Louisiana Industries were:
"1. Was the concrete involved unreasonably dangerous to normal use?
"2. Did Louisiana Industries have knowledge that the wet cement would cause injury?"
To both these interrogatories the jury responded "No." Obeying its verdict sheet instructions, the jury did not answer any remaining interrogatories. Among the unanswered remaining interrogatories was one which sought a determination of whether Louisiana Industries had a duty to warn plaintiff of the dangerous quality of wet cement, and another that inquired whether *578 the failure to warn was a proximate cause of the injuries.
To the interrogatories respecting the negligence of Mr. and Mrs. Jowers, the jury answered only the first, which was:
"Did Mr. and Mrs. Jowers have knowledge that wet cement could cause injury?"
The jury answered "No."
In accordance with these jury responses the trial court rendered judgment in favor of both defendants dismissing plaintiff's claims.
The basic issue on appeal is whether defendants had a duty to warn under the circumstances, and whether their failure to warn rendered them liable to plaintiff for his injuries. We will discuss the liability of the two defendants separately.
Louisiana Industries
It makes no real difference on the facts of this case whether we approach a determination of this defendant's liability as manufacturer from the standpoint of strict liability, or from the standpoint of negligence. The major distinction between the two theories of recovery lies in the fact that the inability of a defendant to know or prevent a risk is not a defense in a strict liability case but precludes a finding of negligence. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). In the present case knowledge of the risk is no problem because Louisiana Industries knew of the risk of injury to skin exposed to portland cement. Printed on its bags of dry cement was the warning that cement or cement dust may irritate skin and an admonition to the user to avoid contact and promptly wash cement from skin or eyes. Based on this fact alone we determine that the jury was clearly wrong in finding Louisiana Industries had no knowledge that wet cement or concrete could cause injury to skin. (The jury may have been misled by the wording of this interrogatory, construing "would cause injury" to mean that Louisiana Industries had to have had actual knowledge that this particular plaintiff was going to be injured. The intent of the interrogatory was whether defendant knew wet cement had the capability of causing injury.)
Since there is no question Louisiana Industries knew of the risk, and no question that the risk caused the injury, our inquiry here is limited to determining whether there existed a duty owed by this defendant to take reasonable steps to prevent the risk from causing injury. Stated another way, did defendant's failure to warn create an unreasonable risk of injury under the particular facts of this case?
In both strict liability and negligence cases, the probability and magnitude of risk are to be balanced against the utility of the product. Unreasonable risk is a requirement of strict liability just as it is in negligence. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Hunt v. City Stores, Inc., supra; Chappuis v. Sears Roebuck & Company, 358 So.2d 926 (La. 1978). We hold that the caustic quality of raw concrete and its propensity to cause burn injuries to unsuspecting users such as "do-it-yourself" home improvers, presents an unreasonable risk of harm.
As the Supreme Court in Chappuis, supra, stated:
Absolute liability upon a manufacturer whose product is useful, traditional, but which might become dangerous in some circumstances must be distinguished from the obligation here involved. There may be many tools or other products which become dangerous for normal use in certain conditions. But when the danger is known to the manufacturer and cannot justifiably be expected to be within the knowledge of users generally, the manufacturer must take reasonable steps to warn the user.

(emphasis supplied)
The manufacturer has a duty to know all the dangerous qualities of the product, and is responsible for making those dangers known to purchasers even though the product itself is not inherently dangerous. O'Brien v. Delta Gas, Inc., 426 So.2d 262 (La.App. 4th Cir.1983); Penn v. Inferno Manufacturing Corporation, 199 So.2d 210 *579 (La.App. 1st Cir.1967), writ refused 251 La. 27, 202 So.2d 649 (La.1967).
Louisiana Industries' liability depends on an analysis of the reasonableness of its conduct in protecting persons against harm resulting from the risk of which it was well aware. Ready-mix concrete does not contain a defect in the ordinary sense of design, composition or manufacturing defect, since the evidence reveals the concrete had been properly mixed. It was not a defect in the thing which created the unreasonable risk of injury, but rather it was the conduct of Louisiana Industries, i.e., its failure to warn of a risk known to it and not to others, that created unreasonable risk of injury to others.
It would have been reasonable, in this case, for defendant to have provided some kind of warning so as to equip plaintiff with knowledge of the danger posed by wet cement, just as it routinely provided a warning to its customers of dry-sack cement to prevent injury to users of that commodity.
In the present case Louisiana Industries failed to warn the Jowers of the caustic nature of the ready-mix concrete. The Jowers, including the plaintiff, had no knowledge of the danger and were merely "do-it-yourself" home improvers. We believe that the ordinary "do-it-yourself" home improver would have no knowledge of the burn risk of wet concrete. Louisiana Industries' breach of its duty to warn the Jowers of the dangers of exposure to portland cement was a cause in fact of plaintiff's injury, which was clearly within the ambit of the risk sought to be avoided by observance of the duty. The risk involved in the hands of the unforewarned "do-it-yourselfer" outweighs the utility of the product. If Alva Jowers knew or should have known of the danger, and chose nevertheless to expose himself to such danger, he would have shared the fault and/or negligence of the manufacturer. See Chappuis, supra. Since the plaintiff did not know and could not reasonably have been expected to know of the risk, he did not share the fault or negligence for the accident. Louisiana Industries alone knew of the risk and failed to warn plaintiff. For these reasons we find Louisiana Industries liable for the injuries sustained by Alva Jowers.
Mr. and Mrs. Jowers
Appellant also argues that the plaintiff's parents should also have been found liable for causing plaintiff's injuries.
The jury found that Mr. and Mrs. Jowers did not have knowledge that wet cement could cause injury. The record supports this finding of fact. That determination precludes a finding of negligence. Entrevia; supra; and Hunt, supra.
On appeal appellant contends that actual knowledge of the risk is not a necessary finding because the parents are strictly liable for the injuries under LSA-C.C. art. 2317.
One of the defenses to strict liability is fault of a third party. In the present case we find that the unreasonable risk of injury was created by Louisiana Industries' failure to warn the users that wet concrete could cause burns to the skin. Therefore, the unreasonable risk of injury was created by the fault of a third party, thus there is no basis for imposing a duty on the Jowers to correct or warn of the dangerous condition created by Louisiana Industries. See Reinhard v. City of New Orleans, 371 So.2d 286 (La.App. 4th Cir.1979), writ denied 374 So.2d 656 (La.1979). Accordingly, we find no liability on the part of Mr. and Mrs. Jowers.

QUANTUM
Since we have determined that Louisiana Industries is liable, we must now determine the amount of damages sustained by the plaintiff.
The plaintiff's medical bills totalled $4,592.07. Dr. Frank Rizzo was the treating physician. He initially examined the plaintiff on November 9, 1981. This examination revealed first and second degree burns on both his legs from the knee down including the ankle areas. He admitted the *580 plaintiff to St. Francis Medical Center for 19 days where he received "Hydrotherapy" treatments, numerous dressings of silvadene cream, and surgery to debride his burns. The surgery as well as the whirlpool treatments and applications of the silvadene cream caused pain. Plaintiff again visited the doctor on February 8, 1982. At this time plaintiff was 99% healed. The injuries resulted in permanent scarring of the legs but did not result in any real physical disability. The healed skin areas will be sensitive to local type irritations. The plaintiff, as well as two other witnesses, testified as to the severity of the pain during the healing process. The plaintiff further complained as to the continued sensitivity of his skin.
Considering the extent of Mr. Jowers' burns, painful treatment, hospitalization and scarring, we conclude that plaintiff is entitled to an award of $20,000 in general damages as well as $4,592.07 in special damages.
For the reasons assigned we affirm the judgment of the trial court dismissing plaintiff's claims against Commercial Union Insurance Company, the homeowner's insurer of the Jowers.
We reverse the judgment dismissing plaintiff's claim against Louisiana Industries and render judgment in favor of plaintiff, Alva Ray Jowers, against the defendant, Louisiana Industries Pre-Stressed Corporation, in the sum of $24,592.07 together with legal interest from judicial demand until paid. All costs of the trial below and on appeal are to be borne by defendant, Louisiana Industries Pre-Stressed Corporation.
AFFIRMED IN PART; REVERSED IN PART; and RENDERED.