463 So.2d 865 (1985)
Annie R. FREE, as Provisional Curatrix of Jessie E. Free, Plaintiffs-Appellants-Appellees,
v.
FRANKLIN GUEST HOME, INC. and Houston General Insurance Company, Defendants-Appellees-Appellants.
No. 16718-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1985.
Rehearing Denied February 22, 1985.
Writs Denied April 19, 1985.
*867 Bruscato, Loomis & Street by Anthony J. Bruscato, Monroe, for plaintiffs-appellants-appellees, Annie R. Free, Laris Gene Free, Percy Free, and Annie Geraldine Free Ban Auken.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, and Samuel T. Singer, Winnsboro, for defendants-appellees-appellants, Franklin Guest Home, Inc. and Houston General Insurance Company.
Before HALL, MARVIN and SEXTON, JJ.
HALL, Judge.
This is an appeal from a judgment pursuant to a jury verdict in favor of plaintiff for $15,000 in a suit brought against a nursing home on behalf of Jessie E. Free, a resident of the home and a victim of a progressive mental deterioration known as Alzheimer's disease. This appeal is a sequel to this court's previous decision, Free v. Franklin Guest Home Incorporated, 397 So.2d 47 (La.App. 2d Cir.1981), writ denied 401 So.2d 975 (1981), which addressed issues of prescription. Our previous decision outlined the factual background of the case as of that time:
Mrs. Free, as provisional curatrix of her husband, filed suit on August 18, 1978 against Franklin Guest Home, Inc. and its liability insurer, Houston General Insurance Company, seeking damages arising out of several incidents which were alleged to have occurred between June, 1974 and February, 1978 while Mr. Free was a resident of the defendant nursing home. The specific incidents alleged in the petition were: (1) In 1975 Mr. Free had two severe cases of pneumonia brought about by neglect of the nursing home, requiring several weeks of hospitalization on each occasion; (2) in 1976 Mr. Free was severely burned while being given a bath by a male orderly; (3) in 1976 Mr. Free was attacked by a fellow patient and struck over his left eye and on the back of his head, all as the result of lack of supervision and care on the part of the defendant nursing home; (4) at an unspecified time Mr. Free was sexually attacked by another male patient, due to improper supervision and attendance by the personnel and supervisors of the defendant nursing home; and *868 (5) in October 1977 Mr. Free sustained a compound fracture of the left hip and a simple fracture of the right hip, which injuries were not discovered until he was hospitalized for other reasons. The plaintiff alleged that "the abuse, indecent treatment, lack of care and supervision, and at times, total neglect, and episodes of totally inhuman injustices, which occurred to Mr. Free while a resident of Franklin Guest Home, resulted solely from the neglect and negligence of the defendant nursing home which allowed injuries and inhuman treatment to be visited upon this sick, aged, and hopelessly weak individual." Plaintiff sought damages for past and future pain and suffering, past and future mental anguish and distress, permanent injuries, refund of payment made to the defendant for care and attendance and past and future medical expenses.
Defendants filed an exception of prescription of one year under LSA-C.C. Art. 3536 as to the first four incidents mentioned above which occurred more than one year prior to the time suit was filed.
Plaintiff then amended and supplemented her petition alleging the existence of a written contract with the defendant and specifically pleading that defendant breached its express contractual obligations in the respects previously alleged and that the damages previously alleged were caused by defendant's breach of its contractual obligations.
After trial of the exception the district court held that plaintiff's claim is one in tort and not in contract. The court held that the plaintiff's claim was based on the general duty of a nursing home to its patient to furnish reasonable care and that an action ex delicto arises from the breach of a general duty while an action in contract springs from special duties. Accordingly, the court held the one-year prescriptive period applicable. Judgment was rendered sustaining the exception of prescription as to the claims for damages resulting from the two cases of pneumonia in 1975, the burns sustained in 1976, and the physical assault in 1976. The exception was overruled as to the claims for damages resulting from the sexual assault (of which plaintiff had no knowledge until within one year prior to filing suit) and the broken hips. Plaintiff appealed.
This court's decision on appeal held that, considering two documents signed and issued at the time Mr. Free was admitted to the nursing home, a contractual relationship existed between the Franklin Guest Home and the appellant, and that appellant was entitled to bring an action for breach of contract against the nursing home, even though such a breach might also give rise to tort liability. Because the action for breach of contract had not prescribed under the ten-year prescriptive period provided in LSA-C.C. Art. 3544, the case was remanded to the district court for trial on the merits.
At the trial on remand, the plaintiff sought damages for the incidents enumerated above. The jury found the plaintiff was entitled to recover only for the incident in which burns were received, and awarded plaintiff $15,000. Costs were assessed against the nursing home as defendant.
Both plaintiff and defendant filed a motion for JNOV and for a new trial. Before these motions were ruled upon, Jesse Free died on January 6, 1984, and his wife and children were substituted as parties plaintiff. The parties' motions for JNOV and for a new trial were denied and both parties appealed.
Plaintiff-appellant asserts five assignments of error:
1. The jury erroneously concluded that there was no breach of contract in the nursing home failing to provide proper care for Jessie E. Free, resulting in hospitalization for a severe case of pneumonia.
2. The jury erroneously concluded that the nursing home did not breach its contract or commit negligence in Jessie E. Free being sexually assaulted by another male patient.

*869 3. The jury erroneously concluded that the nursing home did not breach its contract in Jessie E. Free being physically abused by another patient assigned to his room.
4. The jury erroneously concluded that the nursing home did not breach its contract or commit negligence in Jessie E. Free sustaining fractures to the left and right hip.
5. The trial judge committed error in failing to grant a judgment notwithstanding the verdict since there was no reasonable factual basis to support the jury verdict.
Defendant-appellant also asserts five assignments of error:
1. The jury erred in holding that the burn suffered by Jessie Free, August 27, 1976 constituted a breach of the nursing home contract to provide nursing case.
2. The trial court committed error in instructing the jury as to the doctrine of res ipsa loquitur.
3. Alternatively, the trial court committed error in improperly instructing the jury in the damages which may be recovered under a claim for breach of contract in that the trial court:
a. Failed to instruct damages arising from the breach of a contract for nursing care are limited to pecuniary losses as opposed to non-pecuniary losses; and
b. The trial court instructed the jury that it had discretion in fixing damages for a breach of contract.
4. Alternatively, the jury abused its discretion in awarding $15,000.00 general damages to Jessie Free as a result of the burn suffered by him.
5. The trial court erred in casting the defendants for all of the costs in connection with the trial of the action.
For the reasons set forth below, we find merit only in the defendant's assignment of error addressing quantum, and otherwise affirm the judgment of the district court.

HOSPITALIZATION FOR PNEUMONIA
While plaintiff-appellants contend that lack of proper care by the nursing home staff was responsible for Mr. Free's contracting pneumonia and having to be hospitalized, the testimony of Dr. Hollis Rogers, who attended Mr. Free when Mr. Free was a patient in the nursing home, indicated not only that a nursing home could not eliminate the risk of its patients contracting pneumonia, but also that it was common for such elderly patients to contract pneumonia. Dr. Rogers was the only physician to testify at trial about the risk, and from his testimony the jury could have reasonably concluded that Mr. Free's pneumonia was not the result of lack of care by the nursing home. Thus, plaintiff's assignment of error on this point is without merit.

SEXUAL ASSAULT
The jury awarded no damages for an incident in which Mr. Free was allegedly sexually assaulted by a psychiatrically impaired male resident who had been accepted for care by the nursing home on recommendation of the staff of the state hospital in Jackson, Louisiana. Plaintiff-appellants contend the jury's failure to award damages was error. The only witness to the incident in question was Mrs. Bobbie Norris, a nurses aide, who walked into the room of the male resident, Mr. Ernest Boudreaux, and discovered Mr. Boudreaux standing behind Mr. Free whose pants were down. Mr. Boudreaux, when surprised by Mrs. Norris, jumped back from Mr. Free while pulling Mr. Free's pants up. However, Mrs. Norris also testified that Mr. Boudreaux's pants were not down, and that she could not see Mr. Boudreaux's penis. Furthermore, Mr. Free appeared calm, and apparently was in no pain. From this testimony the jury could have reasonably concluded that Mr. Boudreaux did nothing more than pull Mr. Free's pants down. While such action may technically be considered an assault, no damages necessarily had to be awarded since Mr. Free would not have suffered physically or mentally from that act.
*870 The record indicates that the nursing home had no prior indication that Mr. Boudreaux possessed any homosexual tendencies, and that homosexual behavior was not associated with Mr. Boudreaux's particular psychiatric impairment. Gertrude Jackson, a nurses aide at the home, testified that she had seen Mr. Boudreaux pull Mr. Free's pajamas down before, and had seen Mr. Boudreaux try to get in bed with other residents. Mrs. Jackson did not indicate, however, that Mr. Boudreaux had actually attempted to engage in sexual relations with any of the residents. Furthermore, Mrs. Eloise Scott, the director of nurses, testified that it was not at all unusual for one elderly patient to undress another.
Finally, while Mrs. Free, who learned of this incident in 1977, recalled finding her husband bleeding rectally on an occasion in 1975, Janie Morris, a L.P.N. at the home, testified that Mr. Free had problems with constipation and occasionally had to have fecal impactions removed. She noted two such occasions in 1975 which were recorded in the nurses notes. Dr. Rogers testified that removing such impactions could result in stretching rectal tissues which in turn could cause bleeding of the tissues.
The evidence outlined above indicates that the jury's decision not to award damages for the incident of alleged sexual assault was not clearly wrong. This decision will not be overturned on appeal.

PHYSICAL ASSAULT
Plaintiff-appellants assert the jury erred in not finding the nursing home had breached its contract by allowing Mr. Free to be physically abused by his roommate. Bruises on Mr. Free's face were alleged to have been caused when Mr. Free's roommate, a Mr. Garner, struck Mr. Free with his cane. No direct evidence was presented to support this claim. While Mrs. Free testified that Mr. Garner used his cane to strike at aides, and that Mr. Garner tried to strike Mr. Free's son on one occasion, no testimony was presented to the effect that Mr. Garner had ever struck, or had ever attempted to strike Mr. Free. Additionally, Dr. Rogers testified that Alzheimer's disease is characterized by some involuntary jerkiness which could cause an individual to bump into objects and receive bruises. The jury was not clearly wrong in choosing to believe that Mr. Free's bruises were not inflicted by Mr. Garner.

HIP FRACTURES
Mr. Free was hospitalized on October 3, 1977, for treatment of a urinary tract infection. On that date x-rays were taken which coincidentally revealed portions of Mr. Free's pelvic region. On October 30 and 31, 1977, during the same hospital stay, X-rays showing the pelvic region were again taken. These later X-rays revealed fractures of the left femur and the right acetabulum or hip socket. Dr. David Lawrence, a radiologist, testified that he could say unequivocally that the fracture of the right acetabulum occurred after October 3rd and thus while Mr. Free was in the hospital. He also stated that in his opinion, the fracture of the left femur was six to twelve weeks old as of October 30, 1977. This would place the occurrence of the fracture at a time prior to Mr. Free's being admitted to the hospital. Dr. Douglas Brown, an orthopedic surgeon, expressed no firm opinion as to when the right acetabulum was fractured, but highly suspected that the fracture of the left femur occurred before October 3rd. Thus there was medical testimony presented from which the jury could have reasonably concluded that the right acetabulum fracture occurred while Mr. Free was under the supervision and control of the hospital and not of the nursing home. On the other hand both doctors agreed that the fracture of the left femur probably occurred before Mr. Free's hospitalization. As noted above, Dr. Lawrence estimated the age of that fracture as six to twelve weeks as of October 30, 1977. Even accepting an estimate nearer six weeks as correct, an examination of Mr. Free's whereabouts during that period reveals that he was not under the exclusive supervision and control of the nursing home for the entire period. Mr. *871 Free had been a patient at the Franklin Parish Hospital from September 9 through September 20, 1977, for treatment of pneumonia. Furthermore, he was transported to and from the hospital by an ambulance service. The jury could have concluded that the evidence was insufficient to prove that the fracture occurred when Mr. Free was in the nursing home instead of when he was in the hospital or being transported to or from the hospital.
Plaintiff-appellants note nursing home records that indicate Mr. Free was apparently in good condition after returning from his September hospital stay, but that indicate an abrupt change for the worse on September 29th continuing until his readmittance to the hospital on October 3rd. This change was manifested by elevated temperature and apparent physical pain. While Dr. Rogers testified that this change could have been the result of the hip fracture, he also stated that similar symptoms could accompany urinary tract infection, suspicion of which was the reason for Mr. Free's readmittance to the hospital on October 3rd.
When the record reveals a reasonable factual basis for the findings of the trier of fact, and those findings are not manifestly erroneous, an appellate court should affirm the judgment made in the lower court. Savoie v. Judice, 458 So.2d 659 (La.App. 3rd Cir.1984); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). The record in this case provides a reasonable factual basis for the jury's verdict, and these findings are not clearly wrong. Thus, the jury's refusal to award damages against the nursing home for the hip injuries will not be disturbed.

PLAINTIFF-APPELLANT MOTION FOR JNOV
Because all the plaintiff-appellant's specifications of error regarding the jury verdict are rejected for the reasons discussed above, the plaintiff-appellant's specification of error asserting that JNOV should have been granted because there was no reasonable factual basis to support the jury verdict must also be rejected.

REFUND OF PAYMENTS
Plaintiff-appellants seek an $18,718.17 refund from the nursing home in addition to damages sought for the particular incidents noted in their assignments of error. This claimed refund represents the total amount of payments made by the Frees for the care provided by the nursing home. Plaintiff-appellants cite LSA-C.C. Art. 1965 which addresses the basis of equity, and assert that it would be incongruous for the nursing home to receive payment in light of the nursing home's lack of care of Mr. Free.
The jury awarded damages for only one of the several breaches of contract alleged by plaintiff-appellants. As discussed below, a proper remedy for this breach is an award for Mr. Free's pain and suffering incident to the breach. Since that award is adequate compensation, plaintiff-appellants are not additionally entitled to a refund of all payments made for the services contracted for and received by Mr. Free. Such a refund is not called for by either the actual terms of the contract or by the equitable provisions of Article 1965.

RES IPSA LOQUITUR; MR. FREE'S BURNS
The proper role of the doctrine of res ipsa loquitur in this case is of particular importance with regard to first and second degree burns on Mr. Free's back which were apparently caused by contact with a hot liquid. Defendant-appellants argue that the trial judge's instruction to the jury on the doctrine of res ipsa loquitur was confusing because it failed to explain that it was the jury's province to decide whether the doctrine was applicable. Defendant-appellants further argue that the instruction was unwarranted.
After reviewing the trial judge's instruction, we find the instruction was not confusing, but adequately set forth the *872 doctrine of res ipsa as well as the circumstances under which the doctrine would apply. The judge did not tell the jury that the doctrine did or did not apply in this case, but simply told the jury the circumstances under which the doctrine would apply. The obvious inference was that the jury should make the determination of applicability.
The other portion of defendant-appellants' argument on this issue is that an instruction on res ipsa was unwarranted since Mr. Free was not in the "exclusive" custody of the nursing home, and since his injury was not one which would only occur by the nursing home's negligence. Defendant-appellants hypothesize that Mr. Free may have suffered his injury through the negligence of someone for whom the nursing home would have no responsibility.
The Louisiana Supreme Court long ago stated the fundamentals of the doctrine of res ipsa loquitur in the case of Lykiardopoulo v. New Orleans and C.R. Light and Power Company, et al., 53 So. 575, 127 La. 309 (La.1910):
In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itselfres ipsa loquiturthat is to say, that a presumption of negligence arises from the fact itself of the accident....
Of course, it is not merely the happening of an accident which creates the presumption of negligence, but the happening of an accident with its attendant circumstances. Jones v. Shell Petroleum Corporation, 171 So. 447, 185 La. 1067 (1936). As stated in the more recent case of Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979):
Res ipsa loquitur is merely a rule of circumstantial evidence whereby negligence is inferred on the part of the defendant because the facts indicate such to be the most probable cause of the injury. The real test of applying res ipsa loquitur is: Do the facts of the controversy suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident?...
Under the facts and circumstances of this case, with particular reference to the burns received by Mr. Free for which the damages were awarded, Mr. Free and his family plainly could not be expected to provide information as to the cause of the accident. On the other hand, the nursing home, whose duty it was to provide total care for Mr. Free, was by far in the best position to know the cause of this unusual occurrence.
We note, parenthetically, that under the nursing home's duty, the home did take "exclusive" custody of Mr. Free. Taking such custody did not mean that Mr. Free would not come into contact with other residents of the home or with visitors to the home.
In the absence of direct evidence to explain the unusual occurrence at issue, the judge did not err in deciding that a jury could reasonably conclude that the most likely explanation of the cause of the accident was the nursing home's lack of supervision and care. It was not necessary that the injury be one that would only occur by the nursing home's negligence before res ipsa could apply. All that was necessary was that the likelihood of other causes be sufficiently reduced so that the jury could reasonably conclude from a preponderance of the evidence that fault, if any, was attributable to the nursing home. Higginbotham v. Mobile Oil Corporation, 545 F.2d 422 (5th Cir.1977), cert. denied 434 U.S. 830, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). Taking the circumstances as a whole, defendant-appellants' mere raising of a possible alternative explanation was not sufficient to eliminate the applicability of res ipsa loquitur, and the judge's conclusion to instruct the jury on the doctrine was not improper.
*873 The corollary to this conclusion must be that the jury would not have erred in deciding to apply res ipsa loquitur under the circumstances of this case. Thus, they properly could have applied the doctrine, and as a result could have found breach of contract on the part of the nursing home for the burns received by Mr. Free.

DAMAGES
Defendant-appellants argue that the trial court should have instructed the jury that damages were not recoverable for non-pecuniary losses. Defendant-appellants further argue that the trial court erred in instructing the jury that it had discretion in fixing damages for a breach of contract. These arguments are based on defendant-appellants' interpretation of LSA-C.C. Art. 1934 as it read at the time of suit, and under which this issue must be decided. That article stated in part:
Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
* * * * * *
3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
In Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), the Louisiana Supreme Court interpreted this article to mean that non-pecuniary damages are recoverable for nonfulfillment of an intellectual object of a contract only when that object is a principal or exclusive object of the contract. The court later acknowledged that the rule was "rather inflexible", and that the rule had received both judicial and scholarly criticism. Gele v. Markey, 387 So.2d 1162 (La.1980). Nevertheless, even under the interpretation given in Meador, supra, we find that the breach of contract in the instant case was such that non-pecuniary damages could be recovered since "intellectual enjoyment" was a principal object of the contract.
The court in Meador correctly noted that Article 1934 first appeared in the Louisiana Civil Code of 1825, that the code was drafted in French and translated into English, and that both the French and English versions are official texts of the code. The court then noted that the following passage from the French article was mistranslated:
Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality, or taste, or some convenience or other legal gratification,....
A better translation was then given by the court:
Where the contract has for its object the gratification of intellectual enjoyment, such as that pertaining to religion, or morality, or taste, or convenience,....
Although the court's translation was more accurate, a further refinement in the translation is given by Professor Saul Litvinoff in a scholarly law review article addressing the subject of moral damages. See Litvinoff, Moral Damages, La.L.Rev. 1 (1977). Professor Litvinoff translated the passage from the article as follows:
When a contract was made for the purpose of securing to a party a purely intellectual enjoyment, such as that related to religion, morality, taste, personal comfort or any other kind of satisfaction of that order, ....
*874 Of particular importance in the present case is the more proper translation of the French word "commodite" as "personal comfort" rather than "convenience". Certainly Mr. Free's contract with the nursing home was one in which personal comfort was a principal object if not the exclusive object. The contract was not one simply for room, or board, or linens and beddings, but was one for Mr. Free's complete care and well-being. In a document entitled "Patient's Rights," the home promised to treat Mr. Free with "consideration, respect, and full recognition of his dignity and individuality...." Thus, breach of this contract allowed damages for non-pecuniary losses to be recovered. Furthermore, the trial court's instruction to the jury on discretion in fixing damages was in accord with the language of the article itself which states:
In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, .... Nevertheless, the amount of damages awarded in this case must be considered excessive. In making this determination we are mindful of the limitation placed upon an appellate court's disturbing of a trial court award. As stated by the Louisiana Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977):
We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award.... Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. (citations omitted)
We are also mindful of the role of prior awards in a determination of the proper amount to be awarded in a case presently before a court. As stated in Reck v. Stevens, 373 So.2d 498 (La.1979):
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries, .... (citations omitted)
Photographs of Mr. Free's burns submitted into evidence reveal two large reddened areas confined to the left side of Mr. Free's back. Several blisters are also visible although confined to a relatively small area. Dr. Rogers characterized these injuries as first and second degree burns probably caused by contact with a hot liquid. Mr. Free's burns required no hospitalization, and required no sedatives or medication for relief of pain. All that was needed to treat these burns was the application of an ointment. The burns apparently healed completely within a month with no scarring. While there was undoubtedly some pain associated with the burns, there is no evidence of any particular manifestations of pain or discomfort experienced by Mr. Free.
Considering the relatively minor nature of the burns, the minimal treatment required, the rapid healing, and the apparently minor effect of the injury on this particular injured person, we find that the jury abused its much discretion in awarding $15,000 for this one incident. In determining an appropriate award at the highest point within the discretion of the trier of fact, we consider prior awards for similar injuries.
In Bonnet, etc. v. Slaughter, 422 So.2d 499 (La.App. 4th Cir.1982), a mother was awarded $4,000 for her child's pain and suffering as a result of painful second degree burns on the right hand and arm caused by hot bath water. The burns were *875 of moderate duration with miniscule scarring. However, because the burns were deep, emergency room treatment, sedatives, and some hospitalization were required.
A $4,500 trial court award was increased on appeal to $8,500 in Huggins v. Hartford Accident and Indemnity Co., 271 So.2d 876 (La.App. 4th Cir.1973). In that case the plaintiff suffered second degree burns to her forearms, hands, parts of both legs, left ear, and first degree burns to her face. She was hospitalized for two weeks, was given moderate doses of narcotics, and was required to undergo painful debriedment of dead skin on several occasions which required increased dosages of narcotics.
Finally, in the more recent case of Jowers v. Commercial Union Insurance Company, 435 So.2d 575 (La.App. 3d Cir.1983), an award of $20,000 general damages was considered appropriate for first and second degree wet concrete burns covering both of plaintiff's legs from the knee down, including the ankle areas. These burns required nineteen days of hospitalization, including whirlpool treatments, numerous dressings of the burns, and surgical debriedment of the burns, all of which caused pain.
A comparison of the injuries present in this case reveals that the burns received and the treatment employed were more similar in nature to those found in Bonnet than to those found in Huggins or Jowers.
Considering the particular plaintiff under the particular facts and circumstances peculiar to this case, the excessive $15,000 jury award should be reduced to $7,500, the highest amount reasonably within the discretion accorded the jury.

COSTS
Defendant-appellants argue that the trial court erred in casting the defendants for all costs since plaintiffs were successful on only one of their asserted claims, and were denied recovery on the rest. The general rule is that costs are to be paid by the party cast in judgment. LSA-C.C.P. Art. 1920. Moreover, the trial judge has great discretion in assessing costs. Clark v. Laird, 458 So.2d 639 (La. App. 3d Cir.1984). The trial judge's decision to cast defendants, who were in breach of contract, with the cost of court was not an abuse of discretion and will not be disturbed.
In accordance with the reasons given above, the judgment rendered in the trial court is amended to reduce the amount of the judgment in favor of plaintiffs from $15,000 to $7,500, but otherwise affirmed. Defendant-appellants are assessed with all costs of this appeal.
AMENDED and AFFIRMED.