462 So.2d 639 (1985)
Daniel R. WINTERROWD
v.
The TRAVELERS INDEMNITY COMPANY et al.
No. 84-C-1308.
Supreme Court of Louisiana.
January 24, 1985.
Rehearing Denied March 7, 1985.
*640 Frank M. Walker, Jr., Charles W. Salley, Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for applicant.
Roy Steven Payne, Jerald L. Perlman, Blanchard, Walker, O'Quinn & Roberts, Shreveport, Edward W. Rundell, Gold, Little, Simon, Weems & Brusner, Alexandria, Billy R. Pesnell, Joseph L. Shea, Jr., Hargrove, Guyton, Ramey & Barlow, Alex L. Smith, Jr., Mayer, Smith & Roberts, Shreveport, for respondents.
DIXON, Chief Justice.
Plaintiff Daniel R. Winterrowd suffered personal injuries when the power press he was operating malfunctioned. He brought suit for damages against his employer, Burl N. Boswell, Boswell's insurer, The Travelers Indemnity Company, Rheem Manufacturing Company, which had repaired the press, E.W. Bliss Company, the manufacturer of the press, its insurer, Aetna Casualty and Surety Company, and others. The jury returned a verdict in favor of plaintiff and against defendants Boswell, The Travelers and Rheem Manufacturing Company, awarding damages of $400,000. The jury found in favor of defendants E.W. Bliss, its insurer Aetna, and others, dismissing plaintiff's demands. Suspensive appeals were taken by Boswell, his insurer The Travelers, and Rheem Manufacturing. A devolutive appeal was filed on behalf of plaintiff. The court of appeal affirmed the jury's finding of liability on the part of Boswell, The Travelers and Rheem, but reversed the judgment in favor of Bliss and Aetna, holding them solidarily liable with the other defendants. The case was reargued before a five judge panel and the original opinion was reinstated. 452 So.2d 269 (La.App.1984). We have granted the petition of defendants Bliss and Aetna for a writ of certiorari. 457 So.2d 1185 (La.1984). Plaintiff's application for writ of certiorari was denied. 457 So.2d 1195 (La.1984).
Plaintiff Winterrowd was a twenty-three year old full time firefighter for the Shreveport Fire Department. With the consent of his employer he also undertook part time employment. He had begun to work for Bosman Industries, a small manufacturer of "Cajun Cookers," on December 23, 1975. On January 8, 1976, the punch press he was operating unexpectedly malfunctioned and made an uninitiated double stroke. Plaintiff, following instructions of his employer, was manually removing the product from the dies at the time. The *641 uninitiated stroke caused the amputation of the thumb, index and middle fingers of plaintiff's left hand, and the thumb of his right hand.
The punch press which caused the injury was manufactured by E.W. Bliss Company in 1907. It was sold the same year to the Michigan Stamping Company. Bliss records indicate that it had supplied parts for the press to Michigan through 1925. Bliss had no specific record of the whereabouts of this press from 1925 until it was notified of this accident in 1976. In 1938 Rheem Manufacturing Company, which owned the press at the time, ordered a new crankshaft from Bliss. Since Rheem did not have the serial number of the press, it sent blueprints with the order. This was sufficient identification for Bliss to be able to send the correct replacement part. Thus Bliss knew the location of its machine in 1938. Rheem did not sell the press until 1974.
According to the testimony of Lewis, a Bliss engineer, Rheem altered the press when it replaced the crankshaft and attached the end cap with a set screw instead of a dowel pin. The evidence showed that this set screw loosened, allowing the end cap to move laterally along the crankshaft, moving the bull gear and resulting in the misalignment of the clutch and latch mechanism. This caused the uninitiated double stroke which amputated plaintiff's fingers.
Defendant manufacturer Bliss and its insurer Aetna contend that the court of appeal erroneously rendered judgment against them based upon its factual conclusion that plaintiff had proven by a preponderance of the evidence that Bliss' failure to warn was a causal factor in plaintiff's injuries. In brief, defendant argues only that there is substantial evidence upon which the jury could reasonably have concluded that there was no causal connection between its failure to warn and plaintiff's injuries; that an ordinary user should have been aware of the dangers of the machine; and that warnings would not have been effective.
Both plaintiff and defendants requested jury instructions on the duty of a manufacturer to warn of dangers inherent in normal use of its product which would not be obvious to the ordinary user. None were given. Objections to the omission were overruled, without explanation, in spite of the fact that Bliss' motion for a directed verdict had already been overruled. The jury, therefore, was without guidance from the court on the question of Bliss' duty to warn.
Bliss manufactured this punch press in 1907. At that time it offered the option of purchase of a "single-stroke" mechanisma construction which would have reduced or eliminated the danger of uninitiated double strokes on its full revolution presses. The press in question was a full revolution press and was not equipped with a "single-stroke" mechanism. The fact that Bliss manufactured such a mechanism in 1907 indicates that Bliss had at least some knowledge of the danger of uninitiated double strokes and of consequent injury to the hands of operators.
In 1907 industrial accidents were becoming a major problem in this country, claiming 35,000 lives a year and causing 2,000,000 injuries. L. Friedman, A History of American Law (1973) at 422. In 1910 another manufacturer of power presses, International Harvester, began to warn operators to keep their hands out of the die area. In 1966 Bliss began to affix warnings to the presses it manufactured. Such warnings were affixed to all presses sold by Bliss after 1973. Operators were warned never to insert their hands into the die area. In 1967 Bliss began publishing a safety pamphlet for the operation of its power presses. This pamphlet instructed the use of tools so that hands might never be inserted into the die area. It also mentioned the existence of operation guards and safety devices. The press in question was never equipped with any such guards or devices.
The facts of this case are not in dispute. The evidence in the record clearly establishes that there was a causal connection between *642 the failure to warn and plaintiff's injuries, that an ordinary user would not have been aware of the danger, and that an adequate warning would have been effective in this case.
The law in Louisiana today requires that a manufacturer provide warning of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user. Chappuis v. Sears, Roebuck & Co., 358 So.2d 926 (La.1978). The duty to warn does not include dangers which are obvious to the ordinary user. The ordinary operator of a punch press would probably realize the danger of placing hands within the die area when the machine was in operation. On the other hand, the operator would have no reason to suspect the danger of an uninitiated double stroke. The operator normally pushed a lever to initiate a stroke. When the lever was not being pushed, the operator would presume that no stroke would occur. The manufacturer, however, did know that the possibility of an uninitiated stroke was always present. Today there is no question that a manufacturer with this knowledge has a duty to warn users of its product of the danger.
The state of the law in 1907 is less specific. Under the Civil Code at that time a person was liable for damage caused by his or her act (C.C. 2315, as amended by Acts 1884, No. 71) or by his or her negligence (C.C. 2316, as in C.C. 1825, art. 2295).
Bliss manufactured the press in New York. The courts of New York had upheld liability on the basis of negligence long before 1907. In 1852 the seller of a bottle of poison had been held to a duty to warn and to liability for failure to place a warning label on the bottle. Thomas v. Winchester, 6 N.Y. 397, 57 Am.Dec. 455 (N.Y. 1852). In 1882 the builder of a scaffold was held to a duty to build with care. Devlin v. Smith, 89 N.Y. 470, 42 Am.Rep. 311 (N.Y.1882). The manufacturer of a defective rope was held liable in 1892. Davies v. Pelham Hod Elevating Co., 20 N.Y.S. 523 (N.Y.App.Div.1892). The manufacturer of an elevator was held liable for injuries caused by its defective elevator in 1904. Kahner v. Otis Elevator Co., 96 A.D. 169, 89 N.Y.S. 185 (N.Y.App.Div. 1904). In the same period, the manufacturer of a steam coffee urn was held liable for negligent design of its product in 1909. Statler v. Ray Mfg. Co., 195 N.Y. 478, 88 N.E. 1063 (1909). Finally in 1916 Judge Cardozo found the manufacturer of an automobile liable to its users for negligent design, despite the sale of the product through a dealer and the absence of privity of contract. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (N.Y. 1916).[1]
Bliss manufactured a machine which it knew, in 1907, posed the danger of an uninitiated double stroke. This danger existed when the machine was in ordinary use. It was not obvious to the ordinary user. Bliss never issued any warnings to alert owners or operators of the machine which caused injury in this case. Bliss did issue and attach warnings to other similar machines which it manufactured more recently.[2]
Bliss argued that it did not know the whereabouts of this machine and therefore could not warn its owners or operators. Yet Bliss could have published warnings in trade journals, making a reasonable *643 effort to notify owners of power presses of the danger and instructing them to warn their operators. There is no evidence that Bliss made any attempt to notify owners of its older machines of the necessity of warnings. It is well known in the industry that power presses have a long useful working life. Bliss itself was aware of this fact because it had discovered through advertising that a press which it had manufacturered in the 1880s was still in use in 1976.
Testimony has shown that if there had been a warning, this plaintiff would have complied with it and his compliance would have prevented his injury.
The court of appeal was correct in holding Bliss solidarily liable for plaintiff's injuries because Bliss, as manufacturer of the press, had a duty to warn. It did not perform its duty to warn owners of older presses.
Its failure to warn was a causal factor in plaintiff's injury.
The judgment of the court of appeal is affirmed, at defendants' cost.
LEMMON, J., concurs and assigns reasons.
WATSON, J., dissents.
BLANCHE, J., dissents and will assign reasons.
LEMMON, Justice, concurring.
One of the essential elements of the plaintiff's proof in a products liability case is evidence that the product was defective at the time that the manufacturer placed the product in commerce. Inasmuch as the plaintiff in this case proved that the machine was defective at the time of its manufacture (in that there was an unreasonable risk of an uninitiated second stroke), Bliss was liable to the plaintiff for breaching its duty either to remedy the dangerous condition by installing a safety device or to display a warning of the danger.[1] Since either action would have prevented this accident, I concur in affirming that part of the judgment of the court of appeal which held Bliss solidarily liable to plaintiff.
I note, however, that Bliss is entitled to indemnity against the other solidarily liable defendants. Plaintiff proved the defect (the risk of an uninitiated second stroke), and it was not necessary that plaintiff prove the cause of the defect. However, the cause of the defect is relevant to the determination of liability as between defendants.
The evidence established that the double stroke in the present case was caused by the attachment of the end cap with a set screw which eventually became loose and allowed the end cap to move across the crankshaft, causing misalignment of the latch mechanism controlling the stroke. The set screw had been installed on the machine by Rheem in place of the dowel pin originally used by Bliss to attach the end cap. Because the set screw was not part of the machine at the time Bliss placed it in commerce, this particular accident would not have occurred but for Rheem's alteration of Bliss' original design. Bliss should be entitled to indemnity against Rheem, the party who actually created the condition that resulted in the double stroke that produced plaintiff's injury. La.C.C. Art. 2106 (now C.C. Art. 1804); Appalachian v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922); Dusenbery v. McMoRan Exploration Co., 458 So.2d 102 (La. 1984). However, since Bliss apparently did not demand indemnity against Rheem, I concur in the decree.
BLANCHE, Justice (dissenting).
The press involved in this accident was manufactured in 1907. However, in 1938, Rheem, a subsequent purchaser of the press, submitted a blue print to Bliss for a new crankshaft to be made to the specifications shown in the blue print. The crankshaft was made in strict compliance with the blue prints submitted by Rheem because *644 the registration number of the machine was not submitted. Further evidence showed that the machine was sold in 1974 to Donald Brown, who later sold the press to Bosman Industries. Neither Brown nor Bosman Industries altered the machine in any way.
The repeat stroke of this press which initiated plaintiff's injuries, was caused by the movement of the end cap on the crankshaft, away from the body of the press. The end cap which in accordance with these new specifications had been replaced on the press in a manner different from its original design and manufacture. The end cap was originally secured with a "dowel pin" that extended through the diameter of the crankshaft. At the time of the accident, the end cap was affixed to the crankshaft with a friction type set screw. Over time, the set screw loosened, allowing the end cap to move laterally along the crankschaft, resulting in misalignment of the later mechanism that regulated the stroke of the ram.
The court of appeal correctly found that the defective alteration of the machine by Rheem was the cause of this accident. While it was possible that the machine, prior to its modification, could have caused injury to plaintiff, the fact remains that this particular injury was caused solely by the defective alteration made by Rheem. Liability for an injury should not be apportioned on what theoretically, under other facts, could have caused the injury when the precise cause of this particular injury to this plaintiff has already been determined.
NOTES
[1] For a discussion of the effects of the passage of time in products liability cases, see G. Schwartz, New Products, Old Products, Evolving Law, Retroactive Law, 58 N.Y.U.L.Rev. 796 (1983); V. Schwartz, The Post-Sale Duty to Warn: Two Unfortunate Forks in the Road to a Reasonable Doctrine, 58 N.Y.U.L.Rev. 892 (1983).
[2] Bliss was held liable for negligent design and failure to warn in a similar case where a full revolution power press had an uninitiated double stroke injuring plaintiff's hand. This press was manufactured in 1951 and caused injury in 1973. Fabian v. E.W. Bliss Co., 582 F.2d 1257 (10th Cir.1978). In the United States Fifth Circuit another manufacturer of a punch press was held liable for its failure to warn of the press' proclivity to double stroke when such a double stroke amputated four of plaintiff's fingers. Gordon v. Niagara Machine & Tool Works, 574 F.2d 1182 (5th Cir.1978).
[1] Because the jury was improperly instructed, the verdict in favor of Bliss is not entitled to any weight. An appellate review of the record, without regard to the jury verdict, establishes that plaintiff proved the essential elements of his case by a preponderance of the evidence.